UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| Adrian Martinez,<br><br>　　　　　　　　　　Complainant,<br><br>v.<br><br>BNSF Railway Co.,<br><br>　　　　　　　　　　Respondent. | Case No. **4:23-cv-580**<br><br>**COMPLAINT**<br>(JURY TRIAL DEMANDED) |

## INTRODUCTION

1.  For reasons unique to the industry, railroads can increase their profit by dissuading employees from reporting the injuries they suffer, blaming them for the injuries they nevertheless report, and then manufacturing a supposedly independent reason to terminate them. So common are these activities that Congress held hearings on them and then amended the Federal Railroad Safety Act, 49 U.S.C. § 20109, providing victims of these activities a private right of action in federal court and relaxing the standards of proof to account for the industry's retaliatory culture. *See*, *e.g.*, *Report of Majority Staff of the Committee on Transportation and Infrastructure Impact of Railroad Injury, Accident, and Discipline Policies on the Safety of America's Railroads: Hearings Before the H. Comm. on Transportation and Infrastructure*, 110th Cong. (Oct. 22, 2007) ("Hearings"); *The Implementing Recommendations of the 9/11's Comm. Act of 2007*, P. L. 110-53, 121 Stat. 444 (Aug. 3, 2007).

2.  BNSF Railway Co. has continued to retaliate against its employees who report injuries. This includes against Adrian Martinez. After he reported an injury, BNSF dug through his medical records, concluded that he had not reported a preexisting condition, and terminated him for it. BNSF had no reason to believe Martinez's preexisting condition prevented him from

1

safely doing his job, a prerequisite to requesting information about employees' medical conditions under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. BNSF's termination of Martinez therefore violates not only the FRSA but also the ADA.

## PARTIES

3. Martinez, who worked for BNSF for more than twenty years, resides in this district.

4. BNSF, which provides freight rail transportation services in numerous states, is headquartered in this district.

## JURISDICTION

5. Jurisdiction is proper under 28 U.S.C. § 1331.

6. Venue is proper under 28 U.S.C. § 1391 because Martinez resides in this district, BNSF is headquartered in this district, BNSF operates in this district, and the illegal conduct occurred in this district.

## FACTUAL ALLEGATIONS

7. In the Spring of 2021, Martinez was having knee pain, for which he sought medical treatment.

8. Martinez's knee pain was not caused by an acute injury of which he was aware.

9. While Martinez's doctor speculated as to what could be causing Martinez pain, he told Martinez that he could not be certain without an MRI.

10. Martinez's doctor told Martinez that Martinez had no restrictions until the MRI was performed and that Martinez could continue working.

11. Martinez therefore continued to work, which he was able to do without incident.

12. On June 18, 2021, however, Martinez felt a pop in his knee while at work and became unable to bear weight on it.

13. Though Martinez knew it may make him a target for retaliation, he immediately reported the injury to BNSF.

14. BNSF had Martinez fill out its injury-report form.

15. BNSF's claims department, which is responsible for compensating employees for their injuries, has played a role in determining what questions are on the form.

16. Some of the questions on the form aim to collect information that might allow BNSF to minimize the amount it pays an injured employee for his or her injury.

17. Martinez left blank questions on the form that may have called for him to disclose his preexisting condition.

18. Martinez left these questions blank because it was not clear whether the form required him to disclose his preexisting condition.

19. Neither did BNSF provide training to Martinez on how to complete its injury-report form.

20. Martinez was not hiding his preexisting injury, *i.e.*, when BNSF's medical department called him about his injury, Martinez not only shared with it that he had a preexisting condition but also released his records demonstrating his preexisting condition to BNSF's medical department.

21. Instead of thanking Martinez for his candor, BNSF accused him of failing to report his preexisting condition and inaccurately reporting his injury insofar as he did not disclose his preexisting condition on the injury report form he had submitted.[1]

---

[1] Pursuant to their his union's collective bargaining agreement with BNSF, Martinez could not be terminated unless an internal hearing was held. The hearings, however, are not a neutral forum where an employee's responsibility for a supposed rule violation is fairly and independently determined; rather, they are a perfunctory means to assign blame to employees regardless of their actual responsibility for rule violations. For example, hearing officers, who act as both prosecutor and judge, are members of management who are appointed by the company;

22. BNSF did so despite Martinez having no motive to misreport his injury.

## **BNSF'S RETALIATORY MOTIVE**

23. Railroads' motive to discourage workers from reporting injuries includes that it is exempt from Workers' Compensation, which means it is liable to employees whose injuries are caused by its negligence.

24. Railroads' motive to discourage workers from reporting injuries also includes that the agency responsible for enforcing railroad safety laws—the Federal Railroad Administration ("FRA")—uses the number of days lost to reported injuries to determine where it should send its inspectors. *See*, *e.g.*, *Barati v. Metro-N. R.R. Commuter R.R. Co.*, 939 F. Supp. 2d 143, 148 (D. Conn. 2013) (quoting the testimony of the former head of the FRA's Office of Safety).

25. BNSF can reduce the days lost to injury in one of two ways, misreporting an injury and terminating the person before he or she loses more days to the injury.

26. Here, BNSF did the former, reporting Martinez's injury as unrelated to work even though the FRA regulations make clear that BNSF must report aggravations of preexisting conditions that occur at work as work-related injuries.

27. BNSF also ensures that supervisors have a personal motive to retaliate against employee who report injuries by maintaining an incentive compensation plan whereby it pays its managers a yearly bonus based, in part, on the number of FRA-reportable injuries employees report (with fewer injury reports translating to higher bonuses), and a ranking system whereby promotions are based, in part on the number of FRA-reportable injuries employees report (with

---

hearing officers have no legal training; charged employees do not have legal counsel present; the rules of evidence do not apply and employees are frequently found responsible based entirely on hearsay; the company can compel witnesses to appear but employees cannot; the company conducts an investigation prior to the hearing but does not provide any discovery—not to mention exculpatory evidence—to the charged employee; and the hearings typically take less than one day. Indeed, the hearing process almost never results in a charged employee's exoneration.

fewer injury reports translating to a better ranking). BNSF maintains such a compensation and ranking plans despite Congress having expressed concern as early as 2008 "that some railroad supervisors [have] intimidated employees from reporting injuries to the FRA, in part, because their compensation depended on low numbers of FRA reportable injuries within their supervisory area." *Araujo v. New Jersey Transit Rail Operations, Inc.*, 708 F.3d 152, 161 n.7 (3d Cir. 2013) (citing Hearings).

28. BNSF further ensures that supervisors have a personal motive to retaliate against employees who report injuries by not only using days lost to injury as a metric in their reviews but also then ranking supervisors based on, *inter alia*, days lost to injury, with less days lost to injury equating to a better ranking.

## BNSF'S RETALIATION WAS PURSUANT TO ITS COMPANYWIDE PRACTICES AND POLICIES

29. The rule BNSF alleges Martinez violated applies companywide.

30. It is a particularly common and companywide practice at BNSF to use these and its other rules, which are vague and could apply to most any situation involving an injury report, to justify retaliation against employees who report injuries.

31. Despite these and other numerous FRSA violations, BNSF has not disciplined a single supervisor for retaliating against employees for engaging in FRSA-protected activity.

## CAUSES OF ACTION

## VIOLATION OF 49 U.S.C. § 20109

32. The FRSA prohibits railroads from demoting, suspending, reprimanding, or in any other way discriminating against an employee for engaging in protected activity. Protected activity includes "notify[ing], or attempt[ing] to notify, the railroad carrier . . . of a work-related personal injury . . . ." 49 U.S.C. § 20109(a)(4). The FRSA also prohibits railroads from

5

disciplining or threatening a discipline to employee for following orders or a treatment plan of a treating physician. 49 U.S.C. § 20109(c)(2).

33. Martinez engaged in protected activity by reporting his injury.

34. BNSF knew Martinez had engaged in protected activity when BNSF supervisors accused him of violating vague and subjective workplace rule and terminated him.

35. Martinez's protected activity contributed to BNSF terminating him. Indeed, it was the but-for cause.

## VIOLATION OF 42 U.S.C. § 12101, *et seq.*

36. BNSF is Martinez's employer within the meaning of the ADA.

37. Section 12112(a) of the ADA prohibits employers from discriminating against employees on the basis of disability in regard to "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment."

38. The ADA defines medical examinations and inquiries as a form of prohibited discrimination, and Section 12112(d)(4)(A) provides that an employer "shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity."

39. BNSF violated this section to the extent it required Martinez to disclose his preexisting condition and then terminated him for not so doing.

40. BNSF made this prohibited inquiry despite the fact that the inquiry was neither job-related nor consistent with business necessity.

41. Because BNSF violated 42 U.S.C. § 12112, Martinez has suffered and will continue to suffer loss of income, emotional distress, and other damages. Martinez is also entitled to attorney's fees and costs in connection with these claims.

42. BNSF committed the above-alleged acts with reckless or deliberate disregard for Martinez's rights. As a result, Martinez is entitled to punitive damages.

## REQUEST FOR RELIEF

43. Martinez requests that the Court find BNSF acted in direct violation of the ADA and FRSA.

44. Martinez further requests that the Court order BNSF to take the following actions for each party individually as follows:

- reinstate him;

- clear and/or expunge any record of misconduct by them regarding the incident described herein;

- pay to him an award for compensatory damages arising from loss of income (or potential loss of income) and benefits in an amount to be determined by the trier of fact;

- pay to him an award for emotional distress in an amount in to be determined by the trier of fact;

- pay to him an award for costs (including litigation and expert costs), disbursements, and attorneys' fees; and

- pay to him an award of $300,000 for punitive damages.

45. Martinez further requests that the Court order judgment against BNSF for all other relief available under the ADA and/or FRSA and such other relief the Court deems just and equitable.

Dated: June 8, 2023

                                              Respectfully submitted,

MACLEAN LAW FIRM, P.C.

/s/ Scotty MacLean
**Scotty MacLean**
State Bar No. 00787942

4916 Camp Bowie Blvd.
Ft. Worth, TX 76107
817-529-1000 (Telephone)
817-698-9401 (Facsimile)
smaclean@macleanfirm.com

**and**

CASEY JONES LAW
Nicholas D. Thompson (MN389609*)
Casey Jones Law
3520 Cherryvale Avenue, Suite 83
Appleton, WI 54913
Email: nthompson@caseyjones.law
Phone: (757) 477-0991
*Pro Hac Vice application forthcoming*

8