**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| Adrian Martinez,<br><br>Plaintiff,<br><br>v.<br><br>BNSF Railway Company,<br><br>Defendant. | Case No.: 4:23-cv-00580-Y<br><br>**PLAINTIFF'S RENEWED INCORPORATED MOTION TO COMPEL AND MEMORANDUM IN SUPPORT** |

## INTRODUCTION

For reasons unique to the industry, railroad have a financial incentive to dissuade employees from reporting the work-related injuries they suffer, blame them for whatever injuries they nevertheless report, and manufacture a supposedly independent reason to terminate them. This motive is something on which the railroads have acted to the point Congress has recognized it as being engrained in their corporate cultures. To try and change this culture, Congress amended the Federal Railroad Safety Act in 2008, giving employees who have been retaliated against for reporting an injury a private right of action and making claims brought under the law easier for employees to prove than other the other laws that govern retaliation in the workplace. The amendment, however, has done little to stop railroads from retaliating against employees who report injuries.

This includes against Adrian Martinez, who BNSF Railway Co. terminated after he reported an injury. At the time, Martinez had been having knee problems unrelated to work, though he suspected it was nothing more than arthritis. Then, while he was climbing the stairs of a locomotive, he felt a pop in his knee, accompanied by immediate and intense pain, and became unable to walk. Martinez reported the injury to BNSF, which accused him of lying about his injury,

claiming that he had been hurt at home and not work, and terminated him. Litigation followed, and it showed that Martinez had, in fact, suffered an injury at work. BNSF then changed its tune, claiming it had not terminated Martinez for lying about his injury and had instead terminated him for not disclosing his preexisting condition. Martinez then removed his case to federal court, where he added a claim under the Americans with Disabilities Act, which limits when an employer can require an employee to share his medical conditions with it. BNSF then again changed its tune, claiming that it terminated Martinez for not disclosing his preexisting condition on the form via which he reported his injury. Never mind that Martinez contemporaneously told BNSF medical department and its claims department about his preexisting condition.

Unable to defend its termination of Martinez on its merits, BNSF is instead trying to prevent Martinez from obtaining the discovery he needs to prove his case. Specifically, BNSF has refused to produce the documents that will show whether its disciplinary process is perfunctory. BNSF has a collectively bargained obligation to conduct a hearing before it can terminate an employee. In other cases, BNSF has argued this process whitewashes the decision makers, *i.e.*, that retaliation could not have occurred because the transcript from the disciplinary hearing was conducted by a manager who knew nothing about the underlying circumstances, the transcript from the hearing was then forwarded to a different manager who also knew nothing about the underlying circumstances, and that these managers were the decision makers. Discovery in those same cases, however, has shown that the accused employee is most always found guilty, from which it follows that the decision to accuse them with the rule violation is the real adverse action. The documents that would show this have been requested by Martinez, and BNSF refuses to produce them.

The documents that will show whether BNSF's disciplinary process is perfunctory are

relevant and should have been produced. Since BNSF has not produced them produced, Martinez is filing this motion to compel. Martinez's motion should be granted.[1]

## BACKGROUND

Martinez worked for BNSF for twenty years. Then, in the spring of 2021, Martinez started to experience intermittent knee pain and sought care from his doctor. Ex. B, APP005. That doctor recommended Martinez get an MRI to be certain the pain was caused by arthritis, but told Martinez he could continue working without limitations. Ex. B, APP005. Martinez then worked without issue until June 18, 2021. Ex. B, APP. On June 18, Martinez was climbing onto an engine and felt a pop in his knee and sharp pain. Ex. B, APP006. He immediately informed the engineer with whom he was working and reported his injury to BNSF. Ex. B, APP006.

Three days later, BNSF ordered Martinez to complete an injury report form. Ex. B, APP010. In addition to submitting the form, Martinez also talked to multiple members of BNSF's medical and claims departments. Ex. B, APP008; APP010. Martinez even completed an interview with a BNSF claims agent, Michael James. Ex. B, APP008. During that interview, Martinez volunteered that he had been suffering from intermittent knee pain prior to when he was injured and detailed the nature of his pain and the care he had sought for it.

Immediately after he reported his injury, Martinez became a target for retaliation. His managers investigated him and scrutinized the video from every camera that might show Martinez working on the day of his injury, searching for a reason to discipline him. Ex. C, APP014-15.

[1] The motion being granted entitles Martinez also to the fees he had had to incur because of BNSF's refusal to produce the documents unless the refusal was substantially justified or other circumstances make an award of fees unjust. Fed. R. Civ. P. 37(a)(5). Neither are there other circumstances that would make an award of fees unjustified nor has BNSF been substantially justified in refusing to produce the documents. Thus, Martinez asks that fees also be awarded and that he be allowed to submit his fees to the Court upon his motion being granted.

Unable to find any inconsistencies with Martinez's explanation of how he was injured, BNSF nevertheless accused Martinez of dishonesty for not reporting his preexisting condition to BNSF. Ex. C, APP0012-13. Before BNSF could terminate Martinez, however, he was entitled to a disciplinary hearing pursuant to his union's collective bargaining agreement. Ex. D, APP017-18.

In theory, these hearings should protect employees from capricious or retaliatory termination. But in practice, the hearings almost universally result in termination. This is because the hearings are presided over by members of management who act as both prosecutor and judge. Ex. D, APP017-22. Those hearing officers have no legal training, charged employees do not have legal counsel present, the rules of evidence do not apply, the company conducts an investigation prior to the hearing but does not provide any discovery—not to mention exculpatory evidence—to the charged employee, and the hearings typically take less than one day. Ex. D, APP017-22.

Following this kangaroo-court hearing, the hearing officer provides a disciplinary recommendation. Ex. D, APP023. The recommendation is then reviewed by a higher-level manager, who always approves the hearing officer's recommendations. Ex. D, APP023-24; Ex. E, APP026-27. The transcript is then reviewed by labor relations, which never recommends that no discipline be issued because the transcript demonstrated the employee did not violate the rule with which they were charged. Ex. F, APP029. The result is that the hearing process almost never results in a charged employee's exoneration. Indeed, the hearing officer for Martinez's hearing, Christopher Grissum, recommended Martinez be terminated for dishonesty. Ex. D, APP023. This despite the fact that Martinez was forthcoming with every member of BNSF with whom he discussed his injury, from his supervisors to the claims department.

## DISCOVERY DISPUTE

Martinez served Requests for Production on July 27, 2023 and November 19, 2023,

seeking, in relevant part:

> Request No. 24: For the twenty-five hearings identified in response to Interrogatory No. 11, produce the transcripts from them, Grissum's recommendations, and the notices of discipline or exoneration.

Ex. G, APP031. On October 12, 2023 and January 5, 2024, BNSF served a series of boilerplate objections to producing the requested documents. Ex. H, APP033. BNSF refused to produce the hearing transcripts, recommendations, and notices of discipline and claimed they were irrelevant and beyond the scope of discovery. Ex. H, APP033.

On January 30, 2024, Martinez's counsel informed BNSF that he intended to file a motion to compel on several outstanding discovery issues. Ex. I, APP035. On March 2, 2024 Martinez requested to meet and confer regarding several written discovery issues. Ex. J, APP037. Counsel conferred on approximately March 8, 2024 and were able to resolve some of the outstanding issues. Thereafter, BNSF produced some of the previously withheld documents and counsel continued to narrow the disputed issues. However, BNSF continued to withhold documents responsive to Requests for Production 7, 24, and 29. Ex. K, APP040.

After again meeting and conferring, Martinez filed a motion to compel, asking that BNSF be ordered to produce two kinds of evidence, the type still at issue in this motion and another one. Dkt. 19. Thereafter, BNSF produced one of the kinds of evidence Martinez sought, leaving only the one at issue in this motion. Ex. A, APP002. Counsel have continued to confer on the disputed issues, however, BNSF still refuses to produce relevant documents. Ex. A, APP002.

## STANDARD

In discovery, the parties may obtain information regarding nonprivileged matters that are relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). A relevant document under Rule 26(b)(1) "need not, by itself, prove or disprove a claim or defense or have strong probative force

or value." *Lopez v. Don Herring Ltd*, 327 F.R.D. 567, 573 (N.D. Tex. 2018). The party resisting discovery bears the burden of showing each request is not relevant, or otherwise overly broad or burdensome. *McLeod, Alexander Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). And simply asserting general or boilerplate objections in order to resist discovery is invalid. *Lopez*, 327 F.R.D. at 578.

**ARGUMENT**

The hearing transcripts, Grissum's recommendations, and the notices of discipline or exoneration are relevant and discoverable.

Martinez's investigative hearing made plain that he was not dishonest either in his report of his injury or in his failure to report his preexisting condition. Still, BNSF terminated Martinez for dishonesty and used the hearing officer's recommendation to justify the termination. Martinez alleges that his termination was retaliatory and seeks the transcripts, recommendations, and notices of discipline to show that these investigative hearings are merely a procedural hurdle to terminating unionized employees.

BNSF has argued that Martinez's termination was not retaliatory because the discipline was recommended by a neutral hearing officer and reviewed by labor relations. Dkt. 26, Def. Br. In Supp. of Its Mot. For Summ. J., 36. However, the frequency at which charged employees are ultimately disciplined tells a different story. That charged employees are virtually always disciplined shows that the underlying charging decision is the true adverse action. *See, e.g., Fresquez v. BNSF Ry. Co.*, No. 17-cv-0844, 2021 WL 857626, at *3 (D. Colo. Mar. 8, 2021) (discussing circumstantial evidence that charging managers drove the retaliatory discipline, despite layers of review). Relevant here, Grissum recommended discipline in nearly three-

quarters of the investigations over which he presided.[2] Ex. L, APP042-43. These numbers belie BNSF's argument that its layers of review prevent retaliatory discipline. The transcripts, recommendations, and the ultimate outcomes of the investigations over which Grissum presided will therefore likely show that regardless of the evidence presented at the investigation, regardless of any procedural objections or substantive issues, charged employees are disciplined.

BNSF asserts a series of boilerplate objections and argues that the information is irrelevant. None of these objections are worthy of credence. As a threshold matter, boilerplate objections are invalid. *Lopez*, 327 F.R.D. at 578. Moreover, the boilerplate objections of confidentiality and privacy are negated by the protective order. *See* Dkt. 18. BNSF next objects that this information has no bearing on the claims or defenses in the case. But as noted above, the transcripts, recommendations, and the resulting discipline or exoneration are relevant both to Martinez's assertion that his termination was pretextual and to BNSF's anticipated defense that Martinez was terminated via an impartial process.

BNSF also objects that "determinations about whether other employees engaged in unrelated misconduct has no bearing on whether Martinez engaged in the misconduct for which he was terminated." Ex. H, APP033. But whether other employees are actually "guilty" of the charges for which they are disciplined is precisely the point. Martinez did not engage in the misconduct for which he was terminated and Grissum recommended discipline anyway. The frequency at which Grissum recommends employees be disciplined, even when the transcript shows they did not engage in the charged misconduct, is probative of whether BNSF's impartial hearing and layers of review actually prevent retaliatory discipline. *See* Dkt. 6 at 9-10 ¶ 21.

[2] It is worth noting that while Grissum testified he has exonerated only two or three employees, BNSF's Answer to Interrogatory No. 11 states that Grissum has recommended no discipline for 7 out of the last 25 employees for which he served as a hearing officer. These inconsistent answers further support Martinez's need for the underlying documents.

## CONCLUSION

For the foregoing reasons, the Court should compel BNSF to produce the responsive documents.

Dated: June 17, 2024

**PLAINTIFF'S COUNSEL**

/s/ Nicholas D. Thompson
Nicholas D. Thompson, (MN 0389609)
CASEY JONES LAW
323 N. Washington Ave., Suite 200
Minneapolis, MN 55401
(612) 208-2735
nthompson@caseyjones.law

Scott MacLean
State Bar No. 00787942
MACLEAN LAW FIRM, P.C.
4916 Camp Bowie Blvd.
Fort Worth, TX 76107
(817) 529-1000
smaclean@macleanlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2024, a true and correct copy of the foregoing Plaintiff's Renewed Incorporated Motion to Compel and Memorandum in Support was filed electronically with the Court using the Court's CM/ECF system which provided notice to all parties of record:

Micah R. Prude
Catherine J. Barbaree
HOLLAND & KNIGHT LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: (214) 969-1700
Email: micah.prude@hklaw.com
Email: catherine.barbaree@hklaw.com
ATTORNEYS FOR DEFENDANT
BNSF RAILWAY COMPANY

*/s/ Nicholas D. Thompson*